RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
SEAN A. MCCLELLAND
Assistant Federal Public Defender
District of Columbia Bar No. 90001362
CHRISTOPHER P. FREY
Assistant Federal Public Defender
Nevada State Bar No. 10589
200 South Virginia Street, Suite 340
Reno, Nevada 89501
(775) 321-8451/Phone
(702) 388-6261/Fax
Sean_McClelland@fd.org
Chris_Frey@fd.org

Attorneys for GREGORY W. PHEASANT

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREGORY W. PHEASANT,<br><br>　　　　　Defendant. | Case No. 3:21-CR-024-RCJ-CLB<br><br>**SUPPLEMENTAL BRIEFING ON LACK OF BLM RANGER STOP-AND-ARREST AUTHORITY**[1]<br><br>[Hearing Requested] |

## I.    INTRODUCTION

The BLM rangers here detained Mr. Pheasant. There appears to be no positive law basis that lets them do that. That makes the detention unlawful. And it means that the two charges that turn on the rangers being "engaged in" official duties are deficient. Thus, to the extent the Court does not suppress evidence or dismiss charges on other grounds, *see* ECF Nos. 57, 59,

_____

[1] The defense submits this briefing consistent with the Court's invitation during the April 13, 2023, status hearing to provide supplemental discussion on BLM ranger stop-and-arrest authority (or, more precisely, the lack thereof). As discussed below, the apparent lack of positive law vesting stop-and-arrest power in BLM rangers warrants both suppression of evidence and dismissal of multiple charges in the indictment.

68, 69-1 (providing those other grounds), it should do so for the independent reason that rangers lack stop-and-arrest power.

## II.    ARGUMENT

### A.    BLM Rangers Lack Stop-And-Arrest Authority.

BLM rangers lack the authority to stop or arrest individuals. There is no positive law that gives them that power. So they could not legally detain Mr. Pheasant.

As a preliminary point, the government bears the burden to prove the BLM rangers have such power. *See, e.g.*, *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."); *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000) (identifying that the government generally bears the burden to show that evidence was lawfully obtained). Even so, to further address the Court's questions from the April 13 hearing, the defense has conducted a diligent search for some basis for such authority.

There appears to be none. Neither federal law nor state law give BLM rangers the ability to stop or arrest individuals. And that has multiple consequences for this case: it means that Mr. Pheasant's detention was necessarily unlawful, and similarly makes the two counts relating to rangers being "engaged in" official duties defective. This Court thus has another independent basis to suppress evidence and dismiss much of the indictment.

### 1.    Federal Law Does Not Give BLM Rangers Such Authority.

Federal law does not give BLM rangers the authority to stop and arrest individuals. Nothing in the BLM's authorizing statute permits them to do so, and no regulation gives them that power either. So BLM rangers lack the authority to detain individuals for purported violations of federal law.

Indeed, the statute seems to contemplate that "*local* officials" will be the ones who enforce "Federal laws and regulations relating to the public lands or their resources." 43 U.S.C.

2

§ 1733(c)(1) (emphasis added). In particular, the statute imagines that the federal government will contract with local law enforcement agents to carry out various law-enforcement responsibilities on public federal lands. *Id.* And those responsibilities include stop-and-arrest authority; contracted local officials can "carry firearms," "execute and serve any warrant," "make arrests," as well as "search" and "seize." *Id.* By the statute, then, local officials—not BLM rangers—are the presumptive enforcers of public land regulations.

There appears to be no comparable authorization for federal BLM rangers. As it does for local officials, the statute imagines that the "Secretary [of the Interior]" might "authorize" certain types of "Federal personnel" to "carry out . . . law enforcement responsibilities" on public lands. 43 U.S.C. § 1733(c)(2). That would give any appropriately-authorized personnel the same responsibilities as contracted local officials (including stop-and-arrest powers). *Id.* But BLM rangers do not appear to have received any such "authoriz[ation]." In fact, it does not seem that any federal personnel have; the Secretary of the Interior has issued no regulations (never mind authorizations) citing that subsection. And absent such authorization, BLM rangers lack stop-and-arrest authority under the relevant statute.

The BLM cannot give itself such authority—though it has tried. During the relevant Memorial Day period, the BLM purportedly self-authorized its rangers with stop-and-arrest power for the purpose of ensuring a "family-oriented recreational experience" (whatever that means) at Moon Rocks:

| BLM OPERATIONAL OBJECTIVES |
|---|
| **Operational Goal**<br>The ultimate goal of the operation is to improve management controls throughout the Moon Rocks area to create a safe, family-oriented recreational experience for visitors. Vigilance on the part of law enforcement officers is imperative to improving and maintaining a safe and family-oriented OHV recreation environment for public land visitors. |

Suppl. Br. Exhibit A at USAO 53.

| ARRESTS |
|---|
| Officers must detain suspects prior to affecting a federal arrest. The U.S. Attorney's Office will be contacted before making a federal arrest. Once detained, the officer must notify the Shift Lead, who will work with the IC for communication with U.S. Attorney's Office. If the AUSA does not support the arrest, the subject can be released with a Violation Notice or an information can be filed at a later date. If the federal arrest is confirmed, the Warrantless Arrest Protocols will be followed and the suspect must be transported to the Washoe County Jail.<br><br>If a federal arrest is made, BLM is responsible for the arrestee's personal property (vehicle, camp supplies). The arresting officer can collect the arrestee's property or have a friend/campmate take possession of it (in writing; signed and submitted as part of case report). If requested by the county, state warrant arrests may be transported by BLM officers to the Washoe County jail.<br><br>Per BLM MOU with Washoe County BLM Officers may detain and transport those with confirmed state warrants to the Washoe County Jail. Call the detention facility and confirm that they are able and willing to accept the detainee (for arrest at jail) prior to transport. |

*Id.* at USAO 59. But, as those materials reveal, the BLM provides no basis to vest itself with such power, only its own say-so.[2] Without that positive law authority, the BLM lacks stop-and-arrest power generally—and especially lacks that power to advance its own conception of what constitutes a "family-oriented" experience at Moon Rocks.

The apparent lack of stop-and-arrest authority is no oversight. Congress knows how to give federal employees the ability to detain people. Indeed, the statute itself directly vests another category of federal personnel—the uniformed desert ranger force for the California

---

[2] The BLM has also issued at least one document in which it claims stop-and-arrest power under (c)(1). *See* Law Enforcement—Criminal, 61 Fed. Reg. 57605-01, 57610 (Nov. 7, 1996). But as discussed, that subsection is just for local officials. And, in any event, the BLM cannot authorize itself to exercise such powers—the authorization must come from the Secretary of the Interior. 43 U.S.C. § 1733(c)(2). And as discussed, there does not appear to be any such authorization for BLM rangers.

Desert Conservation Area—with such authority. 43 U.S.C. § 1733(e) ("The officers and members of such [California Desert Conservation Area] ranger force shall have the same responsibilities and authority as provided for in paragraph (1) of subsection (c) of this section."). Had Congress wanted to do the same for BLM rangers everywhere, it could have done so. But it did not. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012) (describing the interpretive principle that the "expression of one thing" "implies the exclusion of others"). Nor, apparently, has the Secretary of the Interior done so via subsection (c)(2). So federal law does not give BLM rangers stop-and-arrest authority.

### 2. Nor Does State Law.

BLM rangers similarly lack stop-and-arrest authority under state law. Nevada law permits certain types of federal officials to make arrests. But BLM rangers are not one of them. *See generally* Nev. Rev. Stat. §§ 171.124, 1245, 1255, 1257 (giving arrest authority to DEA officers, FBI and Secret Service agents, BIA officers, and USPS Postal Inspectors). So BLM rangers would likewise lack stop-and-arrest authority even to the extent they were purporting to enforce state law.

As a result, BLM rangers lack any positive law basis to stop or arrest individuals on federal land, or anywhere for that matter. Chasing Mr. Pheasant down and detaining Mr. Pheasant was therefore unlawful.

### B. The Lack Of Stop-And-Arrest Authority Warrants Both Suppression And Dismissal.

The rangers' lack of stop-and-arrest power has at least two effects on this case. First, it is another reason why Mr. Pheasant's detention was improper. And, second, it is another reason to dismiss the two charges that require the BLM rangers to have been "engaged in" official duties. Both problems warrant resolution by this Court.

### 1.    Since Rangers Lacked Stop-And-Arrest Power, They Could Not Legally Detain Mr. Pheasant.

The first and most obvious consequence of the BLM rangers' lack of stop-and-arrest authority: they could not legally stop or arrest Mr. Pheasant. That gives the Court another basis to conclude that Mr. Pheasant's detention was unlawful. *See also* ECF Nos. 57, 68 (providing other reasons). Evidence from that detention should therefore be suppressed.

Detaining someone without authority to do so is unconstitutional. *Ross v. Neff*, 905 F.2d 1349, 1353–54 (10th Cir. 1990) ("A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause. . . . [and] is presumptively unreasonable."); *United States v. Henderson*, 906 F.3d 1109, 1116–18 (9th Cir. 2019) (identifying the Fourth Amendment principle, grounded in its original public meaning, that it is unconstitutional for an officer to search or seize outside his lawful authority). That means that, on top of the various constitutional infirmities identified in Mr. Pheasant's motion to suppress, ECF Nos. 57, 68, Mr. Pheasant's detention was also unconstitutional given the rangers' lack of stop-and-arrest authority. For that independent reason, evidence collected during and after the detention should be suppressed.

### 2.    Absent Stop-And-Arrest Authority, The Assaulting-A-Federal-Officer Charge (Count 1) And The Citation-Based Creation-Of-Risk Charge (Count 2) Likewise Warrant Dismissal.

For similar reasons, multiple charges warrant dismissal given the rangers' lack of stop-and-arrest authority. The assaulting-a-federal-officer charge (Count 1) and the citation-based creating-a-risk charge (Count 2) both require that the allegedly-assaulted person be "engaged in" official duties. But all the alleged misconduct here happened when the rangers were trying to detain Mr. Pheasant—something that, as discussed above, they cannot do. That makes these charges nonviable. To the extent they survive the various other challenges (nondelegation,

vagueness-and-overbreadth, pleading failures, etc.), *see* ECF Nos. 59, 69-1, they should therefore be dismissed on lack-of-stop-and-arrest-authority grounds.

### a.    The Rangers Were Not Engaged In Official Duties When Trying To Stop Mr. Pheasant.

The assault charge (Count 1) requires that the allegedly-assaulted officer be "engaged in . . . the performance of official duties" at the time of the alleged assault. 18 U.S.C. § 111(a)(1), (b);[3] *see* ECF No. 1. Per the government, the allegedly-assaulted ranger (Ranger Sarcinella) was sprayed with rocks while he was "follow[ing] and attempt[ing] to stop" Mr. Pheasant. ECF No. 64 at 6. But, as discussed, BLM rangers lack the authority to detain individuals. So they are not "engaged in . . . the performance of official duties" when trying to do so. *Cf. Blankenhorn v. City of Orange*, 485 F.3d 463, 479–80 (9th Cir. 2007) (identifying that individuals have a Fourth Amendment right to resist arrest when an officer is engaged in a "personal frolic" outside lawful authority); *United States v. Bundy*, 406 F. Supp. 3d 932, 936–37 (D. Nev. 2018) (same). That makes a charge under 18 U.S.C. § 111 improper. Count 1 should therefore be dismissed.

### b.    It Is Not Unlawful To Resist Someone Who Lacks Stop-And-Arrest Authority.

The same goes for the citation-based creating-a-risk charge (Count 2). Like the assault charge above, for a defendant to have created a risk by "[r]esisting . . . issuance of a citation," the BLM ranger had to be an "authorized officer" "engaged in performance of official duties." 43 C.F.R. § 8365.1–4(a)(4). But, as discussed, BLM rangers lack authority to detain anyone. So it is not unlawful to resist BLM rangers who try to detain you. *See Blankenhorn*, 485 F.3d at 479–80; *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (identifying that, for

---

[3] The other aspect of the statute—prohibiting assaults "on account of" official duties—is not at issue here. Neither discovery nor the government's briefing suggests any alleged assault happened for that reason. Accordingly, this Court can focus solely on the "engaged in" clause.

analogous California state law, "[i]f the officer was not performing his or her duties *at the time of the arrest,* the arrest is unlawful and the arrestee cannot be convicted" (quotation omitted) (emphasis in original)). That is all Mr. Pheasant is alleged to have done. *See* ECF No. 1. So Count 2 should likewise be dismissed.

## III.    CONCLUSION

For the independent reason that BLM rangers lack stop-and-arrest authority, Mr. Pheasant asks the Court to suppress evidence stemming from his detention and to dismiss Count 1 and Count 2.

DATED this April 18, 2023.

RENE L. VALLADARES
Federal Public Defender

By:    */s/ Sean A. McClelland*

SEAN A. MCCLELLAND
Assistant Federal Public Defender
CHRISTOPHER P. FREY
Assistant Federal Public Defender

**CERTIFICATE OF ELECTRONIC SERVICE**

I certify that on April 18, 2023, I electronically filed the foregoing with the United States District Court for the District of Nevada by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. The following non-CM/ECF participants will be served by U.S. Mail: Gregory W. Pheasant.

/s/Katrina Burden
Katrina Burden
Federal Public Defender Employee

9